# ORIGINAL

1  Donald P. Tremblay, Esq. (CA Bar No. 83109)
   Law Offices of Donald P. Tremblay
2  12651 High Bluff Drive, Suite 300
   San Diego, CA 92130
3  Tel:   (858) 792-7492
   Fax:   (858) 792-7768
4  Email:  dontremblay@mac.com

5  Attorneys for Plaintiffs J. Douglass Jennings, Jr.,
   A.P.C. and John Douglass Jennings, Jr., Esq.
6

7

8               UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  J. DOUGLASS JENNINGS, JR., A.P.C., a        )  Case No. **'08 CV 676 BEN AJB**
    California Professional Corporation; and    )
11  JOHN DOUGLASS JENNINGS, JR., ESQ., a        )
    California resident,                        )  **COMPLAINT FOR BREACH OF**
12                                              )  **CONTRACT (DUTY TO DEFEND);**
                            Plaintiffs,         )  **BREACH OF CONTRACT (DUTY TO**
13                                              )  **INDEMNIFY); BREACH OF THE**
            vs.                                 )  **IMPLIED COVENANT OF GOOD FAITH**
14                                              )  **AND FAIR DEALING; FRAUD;**
    ILLINOIS UNION INSURANCE                    )  **NEGLIGENT MISREPRESENTATION;**
15  COMPANY, an Illinois Corporation,           )  **ESTOPPEL; PUNITIVE DAMAGES;**
                                                )  ***BRANDT* FEES; AND DECLARATORY**
16                          Defendant.          )  **RELIEF**
                                                )
17  _____ )  **DEMAND FOR JURY TRIAL**

18      Plaintiffs J. Douglass Jennings, Jr., A.P.C. and John Douglass Jennings, Jr., Esq. allege as

19  follows:

20                    **JURISDICTION AND VENUE**

21      1.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28

22  USC § 1332(a), because there is complete diversity of citizenship between the parties and the

23  amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

24                          **THE PARTIES**

25      2.      The Plaintiff J. Douglass Jennings, Jr., A.P.C. ("Jennings APC") is a professional

26  law corporation duly organized and existing under the laws of the State of California, with its

27  principal place of business in La Jolla, San Diego County, California.  The Plaintiff John Douglass

28  Jennings, Jr., also known as J. Douglass Jennings, Jr., Esq. ("Jennings ESQ") is an individual

1  residing in the County of San Diego, California, a practicing attorney in San Diego County,

2  California licensed by the State Bar of California, and the sole owner of Plaintiff Jennings APC.

3          3.      Defendant Illinois Union Insurance Company is, and at all relevant times has been, a

4  corporation organized and existing under the laws of the State of Illinois.

5          4.      Defendant Illinois Union's principal place of business is located in the State of

6  Illinois but, at all times relevant hereto, has done business in California.

7          5.      Defendant Illinois Union Insurance Company shall be referred to herein as "Illinois

8  Union", and Plaintiffs Jennings APC and Jennings ESQ shall be referred to collectively as

9  "Jennings Insureds".

10                                **GENERAL ALLEGATIONS**

11  **A.    Illinois Union Insurance Company Employment Practices Liability Insurance Policy
            and Its Coverage for Claims of Wrongful Termination and Constructive Wrongful**
12  **       Termination**

13         6.      On September 19, 2006, Illinois Union issued Employment Practices Liability Policy

14  (EPLI) No. N04148587 to Plaintiff Jennings PAC, employer of Plaintiff Jennings ESQ.  (A true and

15  correct copy of said policy is attached hereto as Exhibit A and incorporated by reference.)

16         7.      The policy contained coverage limits of $1,000,000.00 each first party insured event

17  limit and $1,000,000.00 total aggregate limit, with a $15,000.00 self-insured retention.  The policy

18  is a claims made policy.

19         8.      The policy definitions provide coverage as follows:

20              "I.    **COVERAGE:  WHAT IS COVERED**
                       A.      We will pay Loss amounts that the insured is legally
21              obligated to pay on account of a Claim because of an Insured Event to
                which this policy applies. ..."; and
22
                       "C.    **Defense.**  We have the right and duty to defend any
23              Claim made or brought against any Insured to which this policy
                applies.  We will give consideration to your preference for defense
24              counsel; however, the final decision is ours. ...

25                              You may take over control of any outstanding Claim
                previously reported to us only if we both agree that you may do so or
26              if required under law or if the court orders you to do so."

27

28
                                        -2-

1    "**E.    Duty to Pay.** We have the duty to pay any Loss that
      results from any Claim made or brought against any insured to which
2    this policy applies. ... We have the duty to pay Defense Costs
      incurred for the defense of any Claim which is controlled by us.
3    Payment of Defense Costs are included in the **COVERAGE LIMITS**
      and are not in addition to the **COVERAGE LIMITS**."

4

5    9.    The policy's definition of "Loss" includes "... settlements and Defense Costs" and its

6    definition of "Claim" includes "A written demand for monetary damages".

7    10.    Both Plaintiffs are insured persons under the policy, respectively, as a "Corporation"

8    and an "employee[s]" under section V of the policy, **WHO IS INSURED**".

9    11.    Policy Definition "C. Employment-Related Discrimination" means "termination of

10    employment relationship ... because of ... any other basis prohibited by federal, state, or local law

11    ...".

12    12.    Policy Definition "D. Employment-Related Harassment" provides coverage for

13    claims of "other verbal ... conduct ... of a non-sexual nature that:

14            1.    Explicitly and implicitly are made a condition of employment;

15            2.    Are used as a basis for employment decisions; or

16            3.    Create a work environment that interferes with performance,
                   or creates an intimidating, hostile or offensive working
17                 environment."

18

19    13.    Policy Definition "G. Inappropriate Employment Conduct" provides:

        "1.    For 'wrongful dismissal, discharge, or termination of
20             employment, whether actual or constructive'.

21            2.    For 'Retaliatory Discharge'.

22            3.    For 'Employment-Related ... humiliation' of a former
                   Employee ....
23
              4.    For 'Employment-Related wrongful infliction of emotional
24                 distress or mental anguish upon ... a former Employee ...'.

25            6.    For 'Employment-Related libel, slander, defamation of
                   character, or any invasion of right of privacy of any employee
26                 or former employee ...'.

27

28

-3-

14.    Exclusion C7 of the policy excludes claims under "ERISA, OSHA, and other such statutes"and specifically excludes "Loss" for violation of "Rules or Regulations promulgated under any of such state statutes or laws, amendments thereto, or similar provisions of any federal, state, or local statutory law or common laws; but this exclusion shall not apply to any Claim for any actual or alleged or retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law, rule, or regulation." Violation of Labor Code provisions are not "any such statutes" such as "ERISA" or "OSHA" or "similar provisions"; and, therefore, Labor Code claims unrelated to ERISA, OSHA, and other such statutes are excepted from Exclusion C7 and coverage is provided for the alleged retaliatory treatment by the employer.

15.    Exclusion M of the policy excludes amounts due under written employment contract or written severance agreement claims but excepts from the exclusion liability to the extent it exists without the contract. Here, claimants' "back pay" is recoverable without contract under the California Labor Code or under a quantum meruit common count for services rendered and unpaid; therefore, liability for these items exists without contract and is, therefore, excepted from Exclusion M of the EPLI policy.

16.    Exclusion L of the EPLI policy excludes "compensation earned or due ... including unpaid salary, bonus, hourly pay, overtime pay, severance pay, vacation or sick days"; but the exclusion does not apply to "back pay or additional compensation allegedly due as a result of Employment-Related Discrimination" as defined in the policy. Herein, the underlying claimant's claims fall within the definition of "Employment-Related Discrimination" and, as such, are excepted from Exclusion L and continue to be covered under the EPLI policy.

**B.    The Morrison Claimants' Claim Letter and Its Allegations of "Employment-Related Discrimination"**

17.    On April 17, 2007, underlying claimants Scott Morrison, Ari David, Dean Gilger and Stacy Otto ("Morrison Claimants") delivered a letter through their attorney, Rodney L. Donohoo, that alleged numerous and diverse employment-related discrimination and wrongful termination claims during the operative period of the Illinois Union EPLI policy. This demand letter contained

1    claims covered under the "G.  Inappropriate Employment Conduct" provisions of the policy,

2    including "wrongful dismissal, discharge, or termination of employment, whether actual or

3    constructive", for "retaliatory discharge", for "employment-related  ... humiliation of a former

4    Employee ...", and for "Employment-Related wrongful infliction of emotional distress or mental

5    anguish upon ... a former Employee ...".  The claims were also excepted from Exclusion C7

6    (exclusion for ERISA, OSHA, and other such statutes; excepts any claim for actual or alleged or

7    retaliatory treatment of the claimants), Exclusion M (excludes amounts due under written

8    employment contract; excepts from the exclusion liability to the extent it exists without the contract;

9    e.g., quantum meruit common count), and Exclusion L (excludes compensation earned or due but

10   excepts from the exclusion back pay or any additional compensation allegedly due as the result of

11   Employment-Related Discrimination").

12   **C.    Plaintiffs' Tenders of Morrison Claimants' Claims to Illinois Union for a Defense and**
         **Indemnity Under the EPLI Policy**

13

14   18.    On April 27, 2007, Plaintiffs Jennings Insureds, through their legal counsel, tendered

15   the Morrison Claimants' demand letter to the Illinois Union EPLI policy in accordance with the

16   terms of notification of claim under that policy.

17   19.    On May 7, 2007, Plaintiffs Jennings Insureds' legal counsel provided a second notice

18   of claim and tenders for defense and indemnity to Illinois Union under its EPLI policy to Attorney

19   Laura R. Zaroski at her new law firm address, specifically, O'Hagan & Spencer, 140 South

20   Dearborn, Suite 800, Chicago, Illinois 60603, when informed that the notice of claim information in

21   the Illinois Union EPLI policy was incorrect.

22   20.    On May 25, 2007, Plaintiffs Jennings Insureds, through legal counsel who was

23   separate from their defense counsel (hereinafter simply referred to as Plaintiffs Jennings Insureds'

24   "coverage counsel"), sent a letter to Illinois Union demonstrating the potential for coverage under

25   the Illinois Union EPLI policy for the claims contained in the Morrison Claimants' April 7, 2007

26   letter, including coverage for wrongful actual or constructive termination, retaliatory discharge,

27   employment-related humiliation, employment-related wrongful infliction of emotional distress or

28

1  mental anguish, employment-related libel or slander, and reasons why the claims were excepted

2  from the potentially applicable exclusions of the EPLI policy. In this letter of May 25, 2007,

3  Plaintiffs Jennings Insureds' coverage counsel also informed Illinois Union of California's law

4  requiring an immediate duty to defend the Plaintiffs Jennings Insureds from the Morrison

5  Claimants' claims.

6       21.    Between April 17, 2007 and August 20, 2007, Attorney Zaroski represented herself

7  as a mere claims representative for Illinois Union and, specifically, that she was not a coverage

8  attorney defending the interests of Illinois Union. In her capacity as a claims representative, she

9  requested certain documents from the Plaintiffs Jennings Insureds relative to the claim. Those

10 documents were provided by Plaintiffs Jennings Insureds on Ms. Zaroski's representation that she

11 was *not* coverage counsel for Illinois Union but merely a claims representative and that she would

12 not share the information obtained within that attorney-client privileged relationship to Illinois

13 Union for the purpose of creating coverage defenses for Illinois Union.

14      22.    Ms. Zaroski made clear in numerous telephone conversations with the Plaintiffs

15 Jennings Insureds' legal counselors that Illinois Union agreed to appoint Plaintiffs Jennings

16 Insureds' selected defense counsel as the insureds' independently retained defense counsel under the

17 Illinois Union policy for the defense of the Morrison Claimants' claims.

18      23.    In order to obtain an early and economical termination of the claim for the Plaintiffs

19 Jennings Insureds, Ms. Zaroski agreed that Plaintiffs Jennings Insureds' defense counsel should

20 proceed with an immediate private mediation to avoid the filing of a complaint which would

21 increase the damages and costs of settlement and likely serve to disparage the professional

22 reputation of the Plaintiffs Jennings Insureds to their further damage.

23      24.    Toward that end, and with the understanding that their defense attorney was retained

24 defense counsel to be paid for by Illinois Union after satisfaction of the Jennings Insureds'

25 $15,000.00 self-insured retention, Plaintiffs Jennings Insureds authorized a private mediation with

26 Judge Herbert Hoffman (Judge of the Superior Courts of California, Retired) to be held on

27 September 4, 2007.

28

-6-

25.     On August 20, 2007, after said mediation had been scheduled with Illinois Union's approval, Attorney Zaroski sent on behalf of Illinois Union a "reservation of rights" letter to the Plaintiffs Jennings Insureds confirming its defense obligation after satisfaction of the self-insured retention, suggesting numerous potential defenses and exclusions to coverage and stating that Illinois Union reserved its rights to rescind the policy and to seek reimbursement of any defense funds it might have paid.  This letter did not *deny* coverage or defense but merely reserved rights.

26.     On September 5, 2007, Plaintiffs Jennings Insureds, through their coverage counsel, sent a letter to Illinois Union demonstrating that it had inadequately reserved its *Buss* rights for reimbursement of defense fees and that, under California law, Illinois Union had an inescapable duty to pay defense costs through and until a court order was entered formally rescinding the policy, if there were grounds to do so and if Illinois Union filed suit for rescission.

27.     With notice to Illinois Union, the mediation was concluded on September 4, 2007, with a settlement demand from the Morrison Claimants, recommended by the Mediator, of $110,000.00 in full settlement of all four Morrison Claimants' demands.  The $110,000.00 settlement demand was good for only 24 hours and was communicated immediately by e-mail, facsimile and telephone to Ms. Zaroski as claims representative for Illinois Union, along with notification that Plaintiff Jennings APC's $15,000 self-insured retention had been satisfied.

28.     On September 5, 2007, Attorney Patricia Caracci of the O'Hagan & Spencer firm, a partner of Ms. Zaroski, contacted Plaintiffs Jennings Insureds' attorneys and indicated that 24 hours was not adequate time to analyze the file, the claim, and the Plaintiffs Jennings Insureds' demand for Illinois Union to pay the $110,000.00 demand.

29.     Plaintiffs Jennings Insureds' defense counsel, who had attended the mediation, explained to Attorney Caracci that the Morrison Claimants had alleged compensatory damages in excess of $450,000.00; that the mediator, Retired Judge Hoffman, had recommended the settlement figure of $110,000.00; and that the mere prospective defense costs would be far in excess of $110,000.00, still leaving the potential for a judgment covered by indemnity under the Illinois Union EPLI policy.  On behalf of Illinois Union, Ms. Caracci asked said defense counsel to obtain

1   an extension of at least seven days for the claimants' mediation demand for a payment of

2   $110,000.00 to be responded to by Illinois Union.

3          30.    In response to said request, defense counsel obtained from the Morrison Claimants'

4   attorney a ten-day extension of time through the close of business on Friday, September 14, 2007, in

5   order that Plaintiffs Jennings Insureds' insurance carrier would have more time to respond to the

6   $110,000.00 recommended mediator's settlement.

7          31.    Also, in response to a request from Illinois Union, Plaintiffs Jennings Insureds'

8   defense counsel promptly provided to Illinois Union before September 14, 2007 a detailed litigation

9   budget showing a minimum defense cost in the amount of $150,000.00 simply to bring the matter to

10  trial as well as provided evidence that Plaintiff Jennings APC's self-insured retention had already

11  been satisfied by defense costs.  At Illinois Union's request, Plaintiffs Jennings Insureds provided a

12  letter from the mediator, Judge Hoffman, confirming his recommendation of the settlement at

13  $110,000.00 for the Morrison Claimants.

14         32.    No response was received by Plaintiffs Jennings Insureds and/or their attorneys from

15  Illinois Union as to its contribution to the settlement until the late afternoon on September 14, 2007

16  – the last day for a response to the Morrison Claimants' $110,000.00 demand.  At that time, Illinois

17  Union faxed a letter to the Plaintiff Jennings Insureds not only rejecting any contribution to the

18  settlement demand, but explicitly denying coverage and terminating and withdrawing any duty to

19  defend previously provided by Illinois Union in Ms. Zaroski's reservation of rights letter dated

20  August 20, 2007.

21  **D.     Illinois Union's Wrongful Denial of the Jennings Insureds' Claim for Defense**

22         33.    Illinois Union's September 14, 2007 letter denies both the defense and indemnity to

23  the Jennings Insureds.

24  **E.     Settlement of the Morrison Claimants' Claims**

25         34.    During the late afternoon of September 14, 2007, after receiving Illinois Union's

26  letter of that date withdrawing defense, denying indemnity, and refusing to contribute to a

27  reasonable settlement within policy limits, and after Illinois Union's oral offer of only $15,000 as its

28

-8-

1    contribution to settlement, the Plaintiffs Jennings Insureds were compelled by economics to settle

2    with the Morrison Claimants and committed to that settlement without Illinois Union's

3    participation.  Facing minimum defense costs of $150,000.00, with the potential of a judgment for

4    compensatory and punitive damages of over $1,000,000.00, the Plaintiffs Jennings Insureds were

5    compelled to accept the settlement demand of $110,000.00 to be paid by October 19, 2007.

6        35.    In a last-ditch effort to gain contribution to the settlement for covered claims, the

7    Plaintiffs Jennings Insureds communicated to counsel for Illinois Union that they would absorb

8    $35,000 of the $110,000 demand, based on Plaintiff Jennings APC's bookkeeper's accounting,

9    which showed the worst case of employment compensation being excluded under the policy and

10   potentially owing to the Morrison Claimants to be $35,000 and Plaintiffs Jennings Insureds

11   demanded Illinois Union contribute $75,000 to the settlement for covered claims.  Illinois Union

12   rejected that demand and offered $15,000 as its bottom-line contribution to settle the claim.

13       36.    After learning that the Plaintiffs Jennings Insureds were compelled by economics to

14   commit to an out-of-pocket settlement of $110,000.00 and after being informed by coverage counsel

15   for the Insureds that, under California law [*Melugin v. Canada Zurich*, 50 Cal. App. 4th 658, at 669

16   (1996)], insurance policies covering employment practices liability owe a duty to defend *even if* no

17   indemnity is owed because of California Insurance Code Section 533, Illinois Union, through its

18   lawyers, attempted to protect itself from its misstatement of the law in its letter withdrawing defense

19   and denying indemnity coverage by sending a last-minute, post-settlement email saying it would

20   again undertake Jennings' defense – at that point, *after* the case had settled and there was no case to

21   defend.

22       37.    Defendant Illinois Union has refused to indemnify the Plaintiffs Jennings Insureds

23   for any of the consideration they paid to settle with the Morrison Claimants.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT (DUTY TO DEFEND)**

26       38.    Plaintiffs incorporate and re-allege Paragraphs 1 through 36 as though fully set forth

27   herein.

39.    Plaintiffs performed all the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Illinois Union EPLI policy.

40.    Defendant Illinois Union breached the terms of its EPLI policy by wrongfully denying insurance benefits to Plaintiffs, which benefits are now due and payable in respective amounts paid by the Plaintiff Jennings APC to defend the Morrison Claimants' claims against Plaintiffs Jennings Insureds up to, through, and after the September 4th mediation, September 14th settlement and October 19th payment of same.

41.    As a direct and proximate result of the above-mentioned breaches of contract by Defendant Illinois Union, Plaintiffs have been damaged in an amount to be proven at trial. Said damages exceed the jurisdictional minimum required by this Court.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT (DUTY TO INDEMNIFY)

42.    Plaintiffs incorporate and re-allege Paragraphs 1 through 36 as though fully set forth herein.

43.    Plaintiffs performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Illinois Union EPLI policy.

44.    Defendant Illinois Union breached the terms of the Illinois Union EPLI policy by wrongfully denying insurance benefits to Plaintiffs, which benefits are now due and payable in respect of consideration paid to settle the Morrison Claimants' claims against the Plaintiffs Jennings Insureds.

45.    As a direct and proximate result of the above-mentioned breach of contract by Defendant Illinois Union, Plaintiffs have been damaged in an amount to be proven at trial. Said damages exceed the jurisdictional minimum required by this Court.

## THIRD CLAIM FOR RELIEF
## TORTIOUS BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

46.    Plaintiffs incorporate and re-allege Paragraphs 1 through 36 as though fully set forth herein.

47.    A relationship of trust and confidence was established between Defendant Illinois Union, on the one hand, and the Plaintiffs Jennings Insureds, on the other, by virtue of their status as the owners and beneficiaries of the Illinois Union policies. Defendant Illinois Union had a duty to deal fairly and in good faith with the Plaintiffs Jennings Insureds in all matters between them.

48.    The Plaintiffs are informed and believe, and on that basis allege, that Defendant Illinois Union breached their duty of good faith and fair dealing owed to the Plaintiffs Jennings Insureds when, among other things, it did the following:

A.    Wrongfully and reasonably denied a claim for a defense which it knew it owed in conscious disregard for the rights of its insured;

B.    Misrepresented the nature of the allegations asserted against its insureds for the purpose of concealing the fact that its denial was wrongful;

C.    Delayed for six months taking a position either accepting or denying coverage in violation of California Insurance Code § 790.03(h)(13) and Cal. Code Regs. Tit. 10, § 2695.7(b);

D.    Failed to promptly investigate Plaintiffs' claim for a defense in violation of California Insurance Code § 790.03(h)(3) and Cal. Code Regs. Tit. 10, § 2695.5(e)(3);

E.    Failed to investigate thoroughly all bases for the potential of coverage before denying benefits to its insureds in violation of Cal. Code Regs. Tit. 10, § 2695.5(e)(3);

F.    Failed to defend its insureds immediately upon learning facts from the complaint which gave rise to a potential for covered liability;

G.    Failed to defend its insureds even though it had no conclusive, undisputed evidence that there was no potential of coverage under its policies;

H.    Dealt unfairly and fraudulently with its insureds by:

1.    Fraudulently obtaining documentary materials from its insureds to which it was not entitled by the false representation of its coverage attorney, Ms. Zaroski, that she was a mere claims representative and that the materials obtained under attorney-client privilege would not be used to establish coverage defenses for Illinois Union;

2.    Falsely offering a defense to the insureds in writing in its reservation

-11-

1  of rights letter while the insured was satisfying its self-insured retention, then minutes before the

2  expiration of the September 14, 2007 settlement demand, withdrawing both a defense and indemnity

3  from the insureds, and abandoning the insureds to settle the Morrison Claimants' mediated

4  settlement demand on its own after leading the insureds to believe it would participate in the

5  resolution of the matter;

6          3.    By inducing its insureds to believe it was providing a defense, then

7  withdrawing a defense at the last minute, Illinois Union induced its insureds not to settle with the

8  Morrison Claimants by means of an assignment of its insureds' rights against Illinois Union,

9  preventing the insureds from exploring through discovery the nature and substance of Claimants'

10  allegations against them, and forced its insureds, as a matter of economics, to accept an out-of-

11  pocket settlement less than prospective defense costs;

12          I.    Failed to accept a reasonable settlement offer within policy limits to get its

13  insureds out of harm's way and reduce both defense and indemnity expenditures in the case

14  [*Hamilton v. Maryland Cs. Co.*, 27 Cal. App. 4th 718, 731 (2002)]; and

15          J.    Failed to give at least as much consideration to the welfare of its insureds as

16  to its own interests.

17      49.    As a direct and proximate result of the above-mentioned breaches of the duty of good

18  faith and fair dealing, the Plaintiffs Jennings Insureds have been damaged in an amount to be proven

19  at trial.  Said damages exceed the jurisdictional minimum required by this Court.

20                                        **FOURTH CLAIM FOR RELIEF**
                                             **FRAUD**

21

22      50.    Plaintiffs incorporate and re-allege Paragraphs 1 through 36 as though fully set forth

23  herein.

24      51.    Defendant Illinois Union, through the representations of its agents and attorneys,

25  represented in writing and through conduct to Plaintiffs Jennings Insureds that Illinois Union was

26  defending the Plaintiffs against the Morrison Claimants' claims, subject to fulfillment of the

27  Plaintiff Jennings APC's self-insured retention.

28

52.     Defendant's representation that it was providing Plaintiffs a defense was false, and Defendant Illinois Union and its agents and attorneys knew it was false.  Specifically, Defendant Illinois Union and its agent and counsel fraudulently misled Plaintiffs Jennings Insureds to believe that it was providing the Plaintiffs Jennings Insureds with a defense with the intent to affect the Plaintiffs Jennings Insureds to undertake a settlement strategy at mediation that would not involve a settlement containing an assignment of the Plaintiffs Jennings Insureds' insurance and bad-faith rights against Defendant Illinois Union.

53.     The Plaintiffs Jennings Insureds proceeded to mediation and negotiated a settlement with the Morrison Claimants without considering an assignment of the Plaintiffs Jennings Insureds' insurance and bad-faith rights against Defendant Illinois Union; because Illinois Union was defending the case, had an inescapable duty to defend, and likely would participate in funding a reasonable settlement in lieu of greater prospective defense costs if the case were filed and litigated through trial.  Plaintiffs justifiably relied on Defendant Illinois Union's affirmative written representation that it was providing a defense under the policy in negotiating the settlement.

54.     With intent to defraud the Plaintiffs, Defendant Illinois Union delayed for ten days responding to the reasonable $110,000.00 settlement demand, falsely justified its need for an extension and justify its delay in responding to said demand under the pretext of needing supporting information to evaluate its settlement contribution to the matter until the last hours in which the settlement could be accepted, then with fraudulent intent, sent a last-minute letter to the Plaintiffs Jennings Insureds withdrawing its defense under the policy and completely declining coverage, all to the Plaintiffs Jennings Insureds' detriment and shock, dismay and distress of Plaintiff Jennings, ESQ.

55.     Had Defendant Illinois Union not fraudulently misled Plaintiffs Jennings Insureds that Defendant Illinois Union was providing a defense, Plaintiffs Jennings Insureds would have negotiated a settlement agreement with the Morrison Claimants involving an assignment of the Plaintiffs Jennings Insureds' policy rights and bad-faith rights against Illinois Union as consideration for the settlement

-13-

56.    By its wrongful conduct, Defendant Illinois Union prevented the Plaintiffs Jennings

Insureds from negotiating a settlement more advantageous to themselves, to the Plaintiffs Jennings

Insureds' detriment, and to their damage in committing to a $110,000.00 settlement, which Plaintiff

Jennings APC was obligated to pay out of pocket.

### FIFTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION

57.    Plaintiffs incorporate and re-allege Paragraphs 1 through 55 as though fully set forth

herein.

58.    In the alternative, Defendant Illinois Union's conduct described above constitutes

negligent misrepresentation.

### SIXTH CLAIM FOR RELIEF
### ESTOPPEL

59.    Plaintiffs incorporate and re-allege Paragraphs 1 through 57 as though fully set forth

herein.

60.    Defendant Illinois Union knew it had an inescapable duty to defend Plaintiffs

Jennings Insureds under the Illinois Union EPLI policy for the claims raised in the Morrison

Claimants' claim letter.

61.    By its conduct and in writing, Defendant Illinois Union intended that its conduct be

relied upon by the Plaintiffs Jennings Insureds to believe that Defendant Illinois Union was

providing a defense to the Morrison Claimants' claims under its defense obligations of the Illinois

Union EPLI policy.

62.    Defendant Illinois Union knew it had a clear duty to indemnify the Plaintiffs

Jennings Insureds for wrongful termination and constructive discharge claims of the Morrison

Claimants.

63.    Defendant Illinois Union intended its conduct to be relied upon by the Plaintiffs

Jennings Insureds, and the Plaintiffs Jennings Insureds had a right to believe that Defendant Illinois

Union intended to provide a defense and indemnity under the Illinois Union EPLI policy.

-14-

64.    The Plaintiffs Jennings Insureds were ignorant of the true state of facts, to wit that Illinois Union was misleading Plaintiffs to believe that it was providing a defense when it actually intended to pull the rug from the Plaintiffs Jennings Insureds at the last minute before the mediation settlement demand had to be accepted.

65.    The Plaintiffs Jennings Insureds detrimentally relied upon Defendant Illinois Union's conduct and reservation of rights letter in believing Defendant Illinois Union was providing them a defense, and the Plaintiffs Jennings Insureds proceeded to negotiate a settlement at mediation without assigning its insurance and bad-faith rights to the Morrison Claimants as consideration for the settlement.  Instead, believing Defendant Illinois Union was standing behind them, the Jennings Insureds negotiated a reasonable settlement for a straight $110,000.00 cash amount believing that Defendant Illinois Union was in fact defending and had an inescapable continuing defense burden and likely obligation to indemnify Plaintiffs.

66.    Defendant Illinois Union should be estopped from denying its defense obligation and from contributing to the Morrison Claimants' settlement amount because of its misleading conduct upon which Plaintiffs Jennings Insureds relied to their detriment.

**SEVENTH CLAIM FOR RELIEF**
**PUNITIVE DAMAGES**

67.    Plaintiffs incorporate and re-allege Paragraphs 1 through 48 as though fully set forth herein.

68.    The Plaintiffs Jennings Insureds are informed and believe, and on that basis allege, that Defendant Illinois Union denied insurance benefits to the Plaintiffs Jennings Insureds despite knowing facts which clearly and unambiguously demonstrated that the Illinois Union policy obligated it to provide to the Plaintiffs Jennings Insureds a timely defense against the Morrison Claimants' claims and mediation demand.  Despite this knowledge, Defendant Illinois Union delayed for six months its response to the Plaintiffs Jennings Insureds' tenders and then made a calculated decision to wrongfully deny the Plaintiffs Jennings Insureds' claim for a defense.  In an attempt to conceal its wrongful denial, Defendant Illinois Union misrepresented the nature of the

1 │ allegations asserted against the Plaintiffs Jennings Insureds, falsely misled the Plaintiffs Jennings

2 │ Insureds into believing it would fulfill its defense obligation to them, and would contribute to a

3 │ reasonable settlement demand at mediation.  This conduct satisfies the statutory grounds of

4 │ "oppression, fraud, or malice" so as to justify an award of punitive damages in order to punish

5 │ Defendant Illinois Union and to deter such conduct in the future.

6 │ **EIGHTH CLAIM FOR RELIEF**<br>**DECLARATORY RELIEF**

7 │

8 │       69.    Plaintiffs incorporate and re-allege Paragraphs 1 through 50 as though fully set forth

9 │ herein.

10 │       70.    An actual, justiciable controversy exists between the parties within the meaning of 28

11 │ U.S.C. § 2201.  Further, each party to this Complaint has an interest in the determination of said

12 │ controversy.

13 │       71.    Plaintiffs allege on information and belief that Defendant Illinois Union denies that it

14 │ has any obligation under the EPLI policy to defend or indemnify Plaintiffs Jennings Insureds or to

15 │ reimburse Plaintiffs Jennings Insureds for the defense and indemnity costs incurred in the defense of

16 │ the underlying claims.

17 │       72.    Plaintiffs Jennings Insureds allege on information and belief that Defendant Illinois

18 │ Union had a duty to defend and indemnify them in the underlying Morrison Claimants' claims.

19 │       73.    Plaintiffs Jennings Insureds further allege on information and belief that Defendant

20 │ Illinois Union has a duty to reimburse them for the defense fees and costs and settlement payments

21 │ incurred in the underlying claims.

22 │       74.    Plaintiffs seek a declaration as to the respective parties' rights and obligations under

23 │ the Illinois Union EPLI policy.

24 │       75.    Plaintiffs seek a declaration that Defendant Illinois Union had a duty to defend them

25 │ in the underlying claims.

26 │       76.    Plaintiffs seek a declaration that Defendant Illinois Union had a duty to indemnify

27 │ them in the underlying claims.

28 │

77.    Plaintiffs seek a declaration that Defendant Illinois Union had a duty to reimburse them for any defense fees or costs incurred in the defense of the underlying claims.

78.    Plaintiffs seek a declaration that Defendant Illinois Union has a duty to reimburse them for the full amount of any indemnity or settlement payments made by Plaintiff Jennings APC in defense and settlement of the underlying claims.

**WHEREFORE,** Plaintiffs demand a jury trial and pray for judgment against Defendant as follows:

1.    For damages sustained as a result of the breaches and tortious breaches of contract, fraud, and negligent misrepresentation alleged herein according to proof;

2.    For an order estopping Illinois Union from denying a defense and coverage to Plaintiffs under the policy and ordering it to pay the $110,000.00 mediated settlement amount;

3.    For attorneys' fees, including but not limited to an award of attorneys' fees pursuant to *Brandt v. Superior Court* (1985), 37 Cal. 3d 813;

4.    For punitive damages pursuant to California Civil Code § 3294;

5.    For pre-judgment interest, costs, and expenses of suit and such other and further relief as the Court deems just and proper; and

6.    For a declaration of the parties' rights and obligations under the Illinois Union EPLI policy, specifically, that Defendant Illinois Union had an immediate duty to defend and indemnify and a present duty to reimburse the Plaintiff Jennings APC for amounts expended in the defense and settlement of the underlying Morrison Claimants' claims.

DATED:    April 14, 2008        LAW OFFICES OF DONALD P. TREMBLAY

By: _____

Donald P. Tremblay, Attorney for Plaintiffs J.
Douglass Jennings, Jr., APC and John Douglass
Jennings, Jr., Esq.

-17-

**EXHIBIT A**



☐ Westchester Surplus Lin⸱ ⸱nsurance Company
   Six Concourse Parkway, S    .500
   Atlanta, GA 30328-5346

☒ Illinois Union Insurance Company
   525 W. Monroe St., Ste., 400
   Chicago, Illinois 60661

**Empl  'ment Practices
Insurance Coverage
Claims First Made and
Reported**

## ORIGINAL

THE INSURED IS REQUESTED TO **READ THIS POLICY.**

N0 41 48 58 7

**IN ALL COMMUNICATIONS** THE POLICY NUMBER SHOULD BE QUOTED

IF THIS POLICY IS INCORRECT, PLEASE RETURN IT IMMEDIATELY TO YOUR BROKER OR
AGENT FOR ALTERATION BY:



**BISYS®** **Specialty
Programs**

118 S. Clinton Street, Suite 450, Chicago, IL 60661
Tel: (312) 879-1079·    Fax: (312) 879-1335
www.bisyscommercialins.com    CA License #0699854

PF-11580

EXHIBIT A, page 1



☐ Westchester Surplus Lines Insurance Company
Six Concourse Parkway, Ste. 2500
Atlanta, GA 30328-5346

☒ Illinois Union Insurance Company
525 W. Monroe St., Ste., 400
Chicago, Illinois 60661

**Employment Practices
Insurance Coverage
Claims First Made and
Reported**

**THIS IS A CLAIMS-MADE AND REPORTED POLICY - PLEASE READ IT CAREFULLY.**

NOTICE:  THIS IS A CLAIMS-MADE AND REPORTED POLICY.  EXCEPT AS OTHERWISE STATED THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR EMPLOYMENT-RELATED DISCRIMINATION, EMPLOYMENT-RELATED HARASSMENT AND INAPPROPRIATE EMPLOYMENT FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE AND THAT ARE REPORTED TO US DURING THE POLICY PERIOD OR ANY LIMITED OR EXTENDED PERIOD. THIS POLICY DOES NOT APPLY TO CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE TERMINATION OF THE POLICY UNLESS, AND IN SUCH EVENT ONLY TO THE EXTENT THAT, A LIMITED OR EXTENDED REPORTING PERIOD APPLIES.

THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS.  AMOUNTS FOR DEFENSE COSTS AND DAMAGES SHALL ALSO BE APPLIED AGAINST THE SELF INSURED RETENTION AMOUNT.

THE APPLICATION FORM AND ATTACHMENTS ARE HEREBY ATTACHED TO AND MADE A PART OF THIS POLICY.

POLICY NUMBER:     N0 41 48 58 7

1.   NAMED INSURED:   J. Douglass Jennings, Jr. APC

   (  ) Individual       (  ) Partnership      ( X ) Corporation      (  ) Joint Venture      (  ) Other

2.   POLICY PERIOD:       FROM: 09/19/2006     TO: 09/19/2007
         AT 12:01AM STANDARD TIME AT THE ADDRESS SHOWN IN NUMBER 3 BELOW.

3.   ADDRESS:     9171 Towne Centre Drive, Suite 350

         San Diego, CA 92122

4.   LIMIT OF LIABILITY:         $1,000,000    Each First Party Insured Event Limit
     (INCLUDING COSTS OF                 NIL    Punitive Damage Limit
     DEFENSE)                 $1,000,000    Total Aggregate Limit

5.   SELF INSURED RETENTION:       $15,000

6.   CO-PAYMENT: (This is your portion of PARTICIPATION for each and every Claim).       $    NIL

7.   PREMIUM:             $7,463.50
                 $223.91    CA  Surplus Lines Tax
                 $13.06    CA  Stamping Fee
                 _____
                 $7,700.47    Total

EXHIBIT A, page 2

 ☐ Westchester Surplus Lines Insurance Company
Six Concourse Parkway, Ste. 2500
Atlanta, GA 30328-5346

☒ Illinois Union Insurance Company
525 W. Monroe St., Ste., 400
Chicago, Illinois 60661

**Employment Practices
Insurance Coverage
Claims First Made and
Reported**

8.    AUTHORIZED
      REPRESENTATIVES:

Attn: Laura R. Zaroski
Donohue Brown Mathewson & Smyth LLC
140 Broadway, 40th Floor  New York, NY 10005
Direct (312) 422-4908  Phone (312) 422-0900  Fax (312) 422-0909
E-mail: laura.zaroski@dbmslaw.com

9.    DATE OF APPLICATION:      09/18/2006

SURPLUS LINES TAXES ARE FILED BY:  Ahern Insurance Brokerage

SPECIAL CONDITIONS:      PF-11580 IU, PF-11519, PF-11540, XS1U96D, TR-17345, TRIA 15, ILP001,
LD-6S23h

*Kevin M. O'Hern*
_____
Authorized Representative

EXHIBIT A, page 3

 



**ACE USA**

En loyment Practices
Insurance

**PLEASE READ THIS POLICY IN ITS ENTIRETY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE RIGHTS AND DUTIES.**

This policy covers Claims alleging **Employment-related Discrimination, Employment-related Harassment** and **Inappropriate Employment Conduct** liability in accordance with the terms, conditions, limitations and exclusions set forth in this policy. It has been issued in reliance upon statements made to us in the Application and any attachments thereto, which are incorporated herein and form part of this policy.

Throughout this policy the words **"you"** and **"your"** refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured.

Under this policy the words **"we"**, **"us"** and **"our"** refer to the underwriters providing this insurance.

The word **"insured"** means any person or organization qualifying as such under Section **V. WHO IS INSURED**.

Other words and phrases that are initially capitalized have special meanings as set forth in Section **XI. DEFINITIONS**.

I.   **COVERAGE: WHAT IS COVERED**

    A.   We will pay Loss amounts that the insured is legally obligated to pay on account of a Claim because of an Insured Event to which this policy applies. However, the amount we will pay is limited as described in Section **VI. COVERAGE LIMITS**, Section **IX. CO-PAYMENT** and Section **VII. SELF INSURED RETENTION** of this policy.

    B.   This policy applies only if:

        1.   A Claim is first made against the insured in accordance with Section **III. WHEN COVERAGE IS PROVIDED**;

        2.   The Claim is first reported in accordance with Section **III. WHEN COVERAGE IS PROVIDED** section and the **CONDITIONS** section X. A. **Duties in the Event of a Claim**; and

        3.   The Insured Event takes place within the Coverage Territory.

    C.   **Defense.** We have the right and duty to defend any Claim made or brought against any Insured to which this policy applies. We will give consideration to your preference for defense counsel; however, the final decision is ours. We have no duty to provide other services or take other actions. Our duty to defend any Claim ends when the **COVERAGE LIMITS** that apply have been exhausted.

        You may take over control of any outstanding Claim previously reported to us only if we both agree that you may do so or if required under law or if a court orders you to do so.

        If your **COVERAGE LIMITS** are exhausted, we will notify you of all outstanding Claims so that you can take over control of their defense. We will help transfer control to you.

    D.   **During the transfer of control.** We agree to take whatever steps are necessary to continue the defense of any outstanding Claim and avoid a default judgment during the transfer of control to you. If we do so, you agree to pay reasonable expenses we incur for taking such steps after the **COVERAGE LIMITS** are exhausted.

    E.   **Duty to pay.** We have the duty to pay any Loss that results from any Claim made or brought against any insured to which this policy applies. Our duty to pay ends when the available **COVERAGE LIMITS** have been exhausted. We will not pay more than the applicable **COVERAGE LIMITS**. We have the duty to pay Defense Costs incurred for the defense of any Claim which is controlled by us. Payment of Defense Costs are included in the **COVERAGE LIMITS** and are not in addition to the **COVERAGE LIMITS**.

EXHIBIT A, page 4

F. **Consent To Settle.** . may, with the consent of the insured, v.  .h shall not be unreasonably withheld, settle any Claim for solely a monetary amount which we deem reasonable. If the insured withholds consent to such settlement, our liability for all Loss on account of such Claim shall not exceed the amount for which we could have settled such Claim plus Defense Costs accrued as of the date such settlement was proposed in writing by us to the insured.

## II. EXCLUSIONS: WHAT IS NOT COVERED

A. **Workers Compensation.** This policy does not cover any Loss arising out of any obligation under worker's compensation, disability benefits or unemployment compensation law, or any similar law. This exclusion does not apply to any Claim for retaliation, Employment-related Discrimination or Inappropriate Employment Conduct on account of the filing of a workers compensation claim, a claim for disability benefits, a claim for unemployment compensation, or a claim under any similar law.

B. **Contractual Liability.** This policy does not cover any Loss for an Insured Event which any insured is obligated to pay by reason of the assumption of another's liability in a contract or agreement. This exclusion will not apply to liability for damages because of an Insured Event that the insured would have without the contract or agreement.

C. **Employee Retirement Income Security Act and Other Laws.** This policy does not cover any Loss imposed on the insured under:

  1. The Employee Retirement Income Security Act of 1974 Public Law 93-406, or any amendments thereto, or any similar federal, state or local law;

  2. The Fair Labor Standards Act (except the Equal Pay Act);

  3. The National Labor Relations Act or Labor Management Relations Act;

  4. The Worker Adjustment and Retraining Notification Act;

  5. The Consolidated Omnibus Budget Reconciliation Act of 1985;

  6. The Occupational Safety and Health Act; or

  7. Rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state or local statutory law or common law;

  but this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law, rule or regulation.

D. **Strikes and Lockouts.** This policy does not cover any Loss arising out of a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations.

E. **Consequential Loss.** This policy does not cover Loss to any claimant's domestic partner, spouse, child, parent, brother or sister as a consequence of an Insured Event.

F. **Prior Knowledge, Notice & Litigation.** This policy does not cover any Loss based upon, arising out of, related to, or directly or indirectly in connection with:

  1. Any fact, situation or circumstance that, prior to the inception date of this policy, any Management or Supervising Employee had reason to believe might result in a Claim; provided, however, that if you have maintained, in continuous force, a policy to provide insurance similar to this policy, this exclusion shall apply only to facts, situations, or circumstances that existed on or prior to the inception date of such insurance.

  2. Any notice given to any insurer prior to the inception date of this policy; or

  3. Any Claim made prior to the inception date of this policy or any fact, situation, or circumstance underlying such Claim.

G. **Bodily Injury and Property Damage.** This policy does not cover any Loss arising from bodily injury (other than emotional distress or mental anguish), sickness, disease or death of any person, or for damage to or destruction of any tangible property including loss of use thereof.

H. **Intent to Cause Damage.** This policy does not cover any Loss based upon, arising out of, or attributable to any act committed by an Insured with intent to cause damage if a final and non-



EXHIBIT A, page 5

appealable judgme:   r adjudication adverse to such insur    establishes that such insured committed such a wrongful act.

**I.**    **Pollution.** This policy does not cover any Loss based upon, arising out of, or attributable to:

    **1.**    The actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of Pollutants into or on real or personal property, water or the atmosphere; or

    **2.**    Any direction or request that the Insureds test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so;

but this exclusion shall not apply with respect to any Claim for retaliatory treatment of the claimant by the insured on account of the claimant's actual or threatened disclosure of the matters described in 1. or 2. of this exclusion.

**J.**    **Gain or Profit.** This policy does not cover any Loss based upon, arising out of, or attributable to an insured gaining in fact any profit, remuneration or financial advantage to which such insured was not legally entitled.

**K.**    **Remedial, Preventive and Non-monetary Awards or Directives.** This policy does not cover the cost of any remedial, preventive or other non-monetary awards or directives including without limitation:

    **1.**    Any costs associated with compliance with any such award or directive of any kind or nature imposed by the terms of any judgment, settlement, or by governmental authority, or

    **2.**    Any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of the Americans with Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws.

**L.**    **Compensation Earned or Due.** This policy does not cover compensation earned by or due to the claimant in the course of employment but not paid, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days or sick days; but this exclusion shall not apply to any back pay or front pay or any additional compensation allegedly due as a result of Employment-related Discrimination.

**M.**    **Employment Contracts.** This policy does not cover amounts determined to be payable under an express written contract with or express written severance obligation of the insured; but this exclusion shall not apply if and to the extent that liability would have attached to the insured in the absence of the written contract with or obligation of the insured.

**N.**    **Medical and Insurance Benefits.** This policy does not cover any loss arising from the insured's failure to provide any medical or insurance benefits to which the claimant alleges to have been entitled or would have been entitled had the insured provided the claimant with a continuation or conversion of insurance.

**III.**    **WHEN COVERAGE IS PROVIDED**

**A.**    This policy applies only to Claims arising out of an Insured Event that are first made or brought during the Policy Period and reported during the Policy Period or, if applicable, during the Limited or the Extended Reporting Period. A Claim is considered to be first made on the date a Management or Supervising Employee is served or first receives notice of a Claim. The date of Claim arising from a fact, situation or circumstance reported in accordance with the Notice of Potential Claim Condition will be the date notice is given under the policy.

**B.**    **Limited Reporting Period** means the thirty (30) day period after the policy ends, during which Claims first made or brought during the Policy Period can be reported.

**C.**    **Extended Reporting Period.** If this policy is non-renewed or canceled by the Named Insured or non-renewed by us, an Extended Reporting Period of twelve (12) months can be added by means of an Extended Reporting Period Endorsement along with the payment of an additional premium.

The Extended Reporting Period Endorsement will not be issued unless we receive a written request for it within fifteen (15) days after the policy ends, and will not take effect unless the

EXHIBIT A, page 6

The additional prem[...] for the Extended Reporting Period E[...]rsement will be one hundred percent (100%) of the premium charged for the last Policy Period. Alternatively, an Extended Reported Period of twenty four (24) months may be purchased for one hundred and fifty percent (150%) of the premium charged for the last Policy Period, or an Extended Reporting Period of thirty six (36) months may be purchased for one hundred and seventy five percent (175%) of the premium charged for the last Policy Period.

However, the Extended Reporting Period will not apply to any Claim if other insurance you buy covers you or would cover you if its limits of coverage had not been exhausted.

Coverage under the Extended Reporting Period is limited to Insured Events which happen or commence before the Policy Period ends and which are otherwise covered by this policy.

D.  **How the COVERAGE LIMITS apply to the Limited and the Extended Reporting Periods.** The **COVERAGE LIMITS** that apply at the end of the Policy Period are not renewed or increased and the Limits, as shown in the Declarations, are not increased by the Limited Reporting Period or the addition of the Extended Reporting Period.

IV.  **COVERAGE TERRITORY**

This policy covers Insured Events that occur anywhere in the world, provided that the Claim is brought within the United States of America, its territories and possessions, or Canada.

V.  **WHO IS INSURED**

A.  **Individual.**  If you are shown in the Declarations as an individual, you or your spouse are insureds but only for the conduct of a business of which you are the sole owner.

B.  **Corporation.**  If you are shown in the Declarations as a corporation or organization other than a partnership or joint venture, you are an insured. Your stockholders are also insureds, but only with respect to their liability as your stockholders.

C.  **Partnership or joint venture.**  If you are shown in the Declarations as a partnership or joint venture, you are an insured. Your partners or co-ventures and their spouses are also insureds, but only for the conduct of your business.

However, no person or organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

D.  **Employees.**  Your Employees, executive officers, directors and your trustees are insureds only for the conduct of your business within the scope of their employment. Your Employee's status as an insured will be determined as of the date of the alleged Employment-related Discrimination, Employment-related Harassment or Inappropriate Employment Conduct that caused the Insured Event.

E.  **Acquisitions.**  Any organization that you newly acquire or form while this policy is in effect is an insured if you own at least fifty one percent (51%) of it and the number of employees of such newly acquired or formed organization do not exceed 20% of the number of employees listed on the application for this policy.  However, if the employees exceed 20%, no newly acquired or formed organization is covered for more than ninety (90) days or the remainder of the Policy Period, whichever is less, from the date acquired or formed unless we agree to cover such acquisition or newly formed organization within such ninety (90) day period in consideration of an additional premium to be determined by us.  Notwithstanding the foregoing, any acquired or formed organization is not covered for Loss that results from an Insured Event that happened or first commenced before the Insured acquired or formed it; nor for Loss covered under any other insurance.

This paragraph does not apply to a partnership or joint venture nor does it apply to any organization once it is shown in the Declarations of this policy.

VI.  **COVERAGE LIMITS**

A.  The limits shown in the Declarations of this policy and the information contained in the **COVERAGE LIMITS** section establish the most we will pay regardless of the number of insureds or Claims made.



EXHIBIT A, page 7

A.    The limits shown       the Declarations of this policy and I       information contained in the **COVERAGE LIMITS** section establish the most we will pay regardless of the number of insureds or Claims made.

B.    **Each First Party Insured Event Limit.**  This is the most we will pay for Claims first made or brought during the Policy Period for Loss that results from any one First Party Insured Event regardless of the number of Claims.

C.    **Total Aggregate Limit.**  This is the most we will pay for the combined total of all Claims first made or brought during the Policy Period for Loss that results from all Insured Events.

D.    **Punitive Damage Limit.**  This is the most we will pay for any Claim for punitive or exemplary damages.  The Punitive Damage Limit is part of and not in addition to the Each First Party Insured Event Limit and the Total Aggregate Limit.

E.    **How the COVERAGE LIMITS apply to an extension of the Policy Period.**  If this Policy Period is extended, the Limits as shown in the Declarations shall not in any way increase.  For purposes of the Coverage Limits any policy extension is considered to be part of and not in addition to the former Policy Period.

## VII.    SELF INSURED RETENTION

Our obligation to pay under this policy applies only to the amount of Loss in excess of any Self Insured Retention amount, as shown in the Declarations, and the **COVERAGE LIMITS** will not be reduced by the amount of such Self Insured Retention.  The Self Insured Retention amount applies separately to each Claim; however, the Self Insured Retention will apply only once to all Claims arising out of any one Insured Event regardless of the number of claimants who allege damages.

## VIII.    SPOUSAL COVERAGE

The estates, heirs, legal representatives, assigns and spouses of an insured shall be considered an insured under this policy; but coverage is afforded to such estates, heirs, legal representatives, assigns and spouses only for a Claim arising solely out of their status as such and, in the case of a spouse, where such Claim seeks damages from marital community property, jointly held property or property transferred from the insured to the spouse.  No coverage is provided for any wrongful act of an estate, heir, legal representative, assign or spouse.  All terms and conditions of this policy, including without limitation the **SELF INSURED RETENTION**, applicable to Loss incurred by the insured shall also apply to loss incurred by such estates, heirs, legal representatives, assigns and spouses.

## IX.    CO-PAYMENT

After the Self Insured Retention, as shown in the Declarations, has been paid by the insured, we will pay the amount of the Loss excess of the Co-payment percentage, as shown in the Declarations.

## X.    CONDITIONS.

We have no duty to provide coverage under this policy unless there has been full compliance with all the conditions contained in this policy.

A.    **Duties In the Event of a Claim**

1.    You must ensure we are given written notice within 30 days after a Claim is made or as soon as practicable.  Notice should include:

a.    The names of the potential claimants and a description of the specific Employment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct that forms the basis of their potential claim;

b.    The identity of the specific insureds allegedly responsible for such specific Employment-Related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct;

c.    The consequences which have resulted or may result from such specific Employment-Related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct;

d.    The nature of the potential monetary damages which may be sought in consequence of such specific Employment-Related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct; and

EXHIBIT A, page 8

e.   The circumstances by which the insureds first became aware of such specific Employment-Related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct.

f.   Paragraphs a. through e. above also apply to Third Party Discrimination and Third Party Harassment if the Third Party Coverage Endorsement is attached to this policy.

2.   You and any other insured must:

a.   Authorize us or our Authorized Representatives, as shown in the Declarations, to obtain records and other information;

b.   Co-operate with us or our Authorized Representatives, as shown in the Declarations, in the investigation or defense of the Claim; and

c.   Assist us or our Authorized Representatives, as shown in the Declarations, in the enforcement of any right against any person or organization which may be liable to the insured because of Loss to which this policy may also apply.

3.   No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent. Subsequent payments which are deemed by us as having been prejudiced by any such voluntary payment will also be the sole responsibility of the insured.

**B.   Notice of a Potential Claim**

Solely at the insured's option, the insured may within the Policy Period give us notice of a fact, situation or circumstance which may result in a Claim, by providing to us the information required in accordance with Condition A. 1. a. through f. If such notice is given within the Policy Period then any Claim subsequently arising from such notice will be deemed to be made on the date such notice was given. Such notice must include the identity of the person(s) who may make a Claim.

**C.   Legal Action Against Us**

No person or organization has the right under this policy:

1.   To join us as a party or otherwise bring us into a suit asking for damages from an Insured; or

2.   To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable **COVERAGE LIMITS**. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant's legal representative.

**D.   Other Insurance**

If other valid and collectible insurance is available to the insured covering a Loss also covered by this policy, other than insurance that is specifically stated to be in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of any other insurance.

**E.   Premium**

1.   The Premium shown in the Declarations is for the Policy Period shown in the Declarations.

2.   The Policy is subject to a minimum earned premium of twenty five percent (25%) of the total Premium shown in the Declarations.

**F.   Cancellation**

You may cancel this policy by mailing to us written notice stating when, following the date of such notice, such cancellation shall be effective. We may cancel this policy for non-payment of premium by mailing to the Named Insured, at the address shown in the Declarations, written



EXHIBIT A, page 9

notice stating when    t less than ten (10) days thereafter su    cancellation shall be effective. The mailing of notl__ shall be sufficient proof of notice.    .e effective date and hour of cancellation as stated in the notice shall become the end of the Policy Period. Delivery of such written notice shall be equivalent to mailing.

If we cancel, earned premium shall be computed pro rata. If you cancel, earned premium may be computed on an other than pro rata basis. Premium adjustment may be made at the time cancellation becomes effective, but the timing of payment or tender of unearned premium will not affect the cancellation.

G.  **Representations**

   1.  The insureds represent and acknowledge that the statements contained in the Application and any materials submitted or required to be submitted therewith (all of which shall be maintained on file by us and be deemed attached to and incorporated into this Policy as if physically attached), are true and:

      a.  Are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and

      b.  Shall be deemed material to the acceptance of this risk or the hazard assumed by us under this Policy.  This Policy is issued in reliance upon the truth of such representations.

   2.  In the event the Application, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission:

      a.  Made with the intent to deceive, or

      b.  Which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this Policy;

      This Policy shall be void ab initio as to:

      i.  Any corporation or organization if any Management or Supervising Employee of such entity knew the facts that were not truthfully disclosed in the Applications; and

      II.  Any insured who knew the facts that were not truthfully disclosed in the Application, whether or not such Management or Supervising Employee or Insured knew the Application contained such misrepresentation or omission.

H.  **When We Do Not Renew**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured shown in the Declarations not less than thirty (30) days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

I.  **Transfer Of Rights Of Recovery Against Others to Us**

   If the insured has rights to recover all or part of any payments we have made under this policy, those rights are transferred to us; the insured must do nothing after a Loss to impair them.  At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

J.  **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

K.  **False Or Fraudulent Claims**

   If any insured shall proffer any Claim knowing the same to be false or fraudulent as regards amount or otherwise, coverage under this policy for said Claim shall be forfeited.

L.  **Change in Ownership**

   If you are acquired by any other person or entity, this policy shall continue in force but coverage is limited to Insured Events that took place prior to the effective date of such acquisition.


EXHIBIT A, page 10

**XI.    DEFINITIONS**

**A.    Claim(s)** means:

   1.    A written demand for monetary damages;

   2.    A civil proceeding commenced by the service of a complaint or similar pleading;

   3.    An arbitration proceeding to which the insured must submit or to which an insured submits with our consent;

   4.    A formal administrative or regulatory adjudicatory or investigative proceeding commenced by the filing of a notice of charge, formal investigative order or similar document; or

   5.    A formal civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the insured of a written notice or subpoena from the investigating authority identifying the insured as a person against whom a formal proceeding may be commenced;

against any insured, including any appeal therefrom; however, a Claim shall not include a labor or grievance proceeding which is pursuant to a collective bargaining agreement.

We have the option but not the duty to defend criminal proceedings at your request. The exercise of our option to defend shall not render us liable for any other Loss. We shall retain the right to withdraw from any optional defense for any reason by giving you thirty days advance notice of our withdrawal.

**B.    Defense Costs** mean those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific Claim including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within **COVERAGE LIMITS** that apply). We have no obligation to furnish any bonds.

We do not consider the following to be Defense Costs:

Salaries and expenses of our employees, including in-house and/or coverage attorneys, salaries and expenses of the insured's Employees or the fees and expenses of independent adjusters we hire.

Defense Costs shall not include amounts incurred prior to giving notice to us or our Authorized Representatives, as shown in the Declarations.

**C.    Employment-related Discrimination** means termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law, including but not limited to the Family Medical Leave Act, Age Discrimination in Employment Act, Americans with Disabilities Act, the Fair Labor Standards Act and the Uniformed Services Employment and Reemployment Rights Act.

**D.    Employment-related Harassment** means unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual or a non-sexual nature that:

   1.    Explicitly or implicitly are made a condition of employment;

   2.    Are used as basis for employment decisions; or

   3.    Create a work environment that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**E.    Employee** means an individual whose labor or service is engaged by and directed by you or any covered organization. This includes, but is not limited to, volunteers, part time, seasonal and temporary Employees as well as any individual employed in a supervisory, managerial or confidential position. Independent contractors and sub contractors are not Employees unless they are your dedicated agents or representatives. Employees who are leased to another employer are not Employees.



EXHIBIT A, page 11

F.　**First Party Insured** ~~ent~~ means actual or alleged acts of E ~~oyment-related Discrimination, Employment-related Harassment, or Inappropriate Employment Conduct by an insured against an Employee, former Employee or applicant for employment with an insured entity.

G.　**Inappropriate Employment Conduct** means any actual or alleged:

　　1.　Wrongful dismissal or discharge or termination of employment, whether actual or constructive;

　　2.　Wrongful demotion, wrongful discipline or retaliatory discharge;

　　3.　Employment-related misrepresentation to, humiliation of, or retaliation against an Employee, a former Employee or an applicant for employment;

　　4.　Employment-related wrongful infliction of emotional distress or mental anguish upon an Employee, a former Employee or an applicant for employment;

　　5.　False imprisonment, false arrest, detention or malicious prosecution of an Employee, a former Employee or an applicant for employment; or

　　6.　Employment-related libel, slander, defamation of character or any invasion of right of privacy of an Employee, a former Employee or an applicant for employment.

　　Inappropriate Employment Conduct shall not include any act or failure to act except as set forth above.

H.　**Insured Event** includes a First Party Insured Event and, if coverage is provided by this policy as indicated by attachment of the Third Party Coverage Endorsement, a Third Party Insured Event.

　　One or more actual or alleged acts which are:

　　1.　Related by an unbroken chain of events; or

　　2.　The subject of class action or multiple plaintiff suits arising out of related Insured Events; or

　　3.　The subject of related Claims brought by the same person

　　will be considered one Insured Event.

　　All Claims arising out of one Insured Event will be deemed to have been first made or brought on the date that the first of those Claims was made or brought.

I.　**Loss**

　　1.　Loss means the amount the insureds become legally obligated to pay on account of each Claim and for all Claims in the policy period and the Limited or Extended Reporting Periods, if exercised, made against them for Employment-related Discrimination, Employment-related Harassment, and Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages, back pay and front pay, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs.

　　2.　Loss does not include:

　　　　a.　Taxes, civil or criminal fines or penalties imposed by law;

　　　　b.　Any amount for which the insureds are absolved from payment;

　　　　c.　The multiple portion of any multiplied damage award;

　　　　d.　Non-monetary relief (this provision does not apply to Defense Costs);

　　　　e.　Liquidated damages where there is a finding of willfulness;

　　　　f.　Payment of insurance plan benefits by or on behalf of retired Employees or that to which a claimant would have been entitled as an Employee had the insured provided the claimant with a continuation of insurance;

　　　　g.　Costs incurred by an insured to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person;

EXHIBIT A, page 12

h.    Matt. . which may be deemed uninsurable acc ...ing to the law under which this policy is construed;

i.    Amounts owed under federal, state, or local wage and hour laws;

j.    Commissions, bonuses, profit sharing or benefits pursuant to a contract of employment; or

k.    Damages arising from any written or express contract of employment or obligation to make payments, including but not limited to severance payments in the event of the termination of employment.

3.    For the purposes of determining the insurability of punitive or exemplary damages under this Policy, we and the insureds agree that the law of the jurisdiction most favorable to the insurability of punitive damages shall control, provided such jurisdiction:

a.    Is where such punitive damages were awarded or imposed; or

b.    Is where the Insured Event for which such punitive damages were awarded or imposed took place; or

c.    Is where any insured that is a corporation, limited liability company, partnership or other organization or association, is incorporated or has its principal place of business.

J.    **Management or Supervising Employee** means any owner, managing partner, chief financial officer, chief executive officer, chief operating officer, executive director, human resource manager, in-house counsel, risk manager or any employee who has the authority to employ or terminate employment of other employees or any person performing the human resource management function.

K.    **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

EXHIBIT A, page 13

## THIRD PARTY COVERAGE ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| J. Douglass Jennings, Jr. APC | | | | |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| EPL | N0 41 48 58 7 | 9/19/2006 To 9/19/2007 | | 9/19/2006 |

| Issued By (Name of Insurance Company) |
|---|
| ILLINOIS UNION INSURANCE CO |

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**
**This endorsement modifies insurance provided under the following:**

**EMPLOYMENT PRACTICES INSURANCE – CLAIMS FIRST MADE AND REPORTED**

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended to include coverage for Claims alleging Third Party Discrimination and Third Party Harassment in accordance with the terms, conditions, limitations and exclusions set forth in this endorsement and in the policy.

| SCHEDULE |
|---|
| $ 1000000      Each Third Party Insured Event Limit |

I.   Under Section **V. WHO IS INSURED D. Employees** is deleted in its entirety and replaced by:

   **Employees.** Your Employees, executive officers, directors and your trustees are insureds only for the conduct of your business within the scope of their employment. Your Employee's status as an insured will be determined as of the date of the alleged Employment-related Discrimination, Employment-related Harassment or Inappropriate Employment Conduct or the Third Party Discrimination or Third Party Harassment that caused the Insured Event.

II.   The provisions of Section **VI. COVERAGE LIMITS** are deleted in their entirety and replaced by:

   A.   The limits shown in the Declarations of this policy and in the Schedule of this endorsement and the information contained in this **COVERAGE LIMITS** section establish the most we will pay regardless of the number of insureds or Claims made.

   B.   **Each First Party Insured Event Limit.** The Each First Party Insured Event Limit shown in the Declarations is the most we will pay for Claims first made or brought during the Policy Period for Loss that results from any one First Party Insured Event regardless of the number of Claims.

   C.   **Each Third Party Insured Event Limit.** The Each Third Party Insured Event Limit shown in the Schedule of this endorsement is the most we will pay for Claims first made or brought during the Policy Period for Loss that results from any one Third Party Insured Event regardless of the number of Claims.

   D.   **Total Aggregate Limit.** The Total Aggregate Limit shown in the Declarations is the most we will pay for the combined total of all Claims first made or brought during the Policy Period for Loss that results from all Insured Events.

   E.   **Punitive Damage Limit.** The Punitive Damage Limit shown in the Declarations is the most we will pay for any Claim for punitive or exemplary damages. The Punitive Damage Limit is part of and not in addition to the Each First Party Insured Event Limit, Each Third Party Insured Event Limit and the Total Aggregate Limit.

   F.   **How the COVERAGE LIMITS apply to an extension of the Policy Period.** If this Policy Period is extended, the Limits as shown in the Declarations and the Schedule of this endorsement shall not increase. For purposes of the **COVERAGE LIMITS** any policy extension is considered to be part of and not in addition to the former Policy Period.

III.   Section **XI. DEFINITIONS** is modified as follows:

   A.   **Claims(s)** is deleted in its entirety and replaced by:

EXHIBIT A, page 14

**A.**  **Claim(s)** means:

1. A written demand for monetary damages;

2. A civil proceeding commenced by the service of a complaint or similar pleading;

3. An arbitration proceeding to which the insured must submit or to which an insured submits with our consent;

4. A formal administrative or regulatory adjudicatory or investigative proceeding commenced by the filing of a notice of charge, formal investigative order or similar document; or

5. A formal civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the insured of a written notice or subpoena from the investigating authority identifying the insured as a person against whom a formal proceeding may be commenced;

   against any insured, including any appeal therefrom; however, a Claim shall not include:

   a. A labor or grievance proceeding which is pursuant to a collective bargaining agreement; or

   b. Class action or multiple plaintiff suits arising out of any Third Party Insured Event.

   We have the option but not the duty to defend criminal proceedings at your request. The exercise of our option to defend shall not render us liable for any other Loss. We shall retain the right to withdraw from any optional defense for any reason by giving you thirty days advance notice of our withdrawal.

**B.**  Paragraph 1. under paragraph I. **Loss** is deleted in its entirety and replaced by:

**Loss** means:

a. The amount the insureds become legally obligated to pay on account of each Claim and for all Claims in the Policy Period and the Limited or Extended Reporting Periods, if exercised, made against them for Employment-related Discrimination, Employment-related Harassment or Inappropriate Employment Conduct for which coverage applies, including, but not limited to, damages, back pay and front pay, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs; and

b. The amount the insureds become legally obligated to pay on account of each Claim and for all Claims in the Policy Period and the Limited or Extended Reporting Periods, if exercised, made against them for Third Party Discrimination or Third Party Harassment for which coverage applies, including, but not limited to, damages, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs.

**C.**  The following definitions are added for purposes of this endorsement:

**Third Party Discrimination** means any practice that denies privileges to a person who is not an Employee because of race, age, sex, nationality, religion or handicap in violation of Federal or state law.

**Third Party Harassment** means unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual or a non-sexual nature that, directed at a specific person who is not an Employee, alarms or causes substantial emotional distress in that person and serves no legitimate purpose.

**Third Party Insured Event** means actual or alleged acts of Third Party Discrimination or Third Party Harassment by an insured against a person who is not an Employee provided such act arises out of the course of an insured entity's business. However, Third Party Insured Event does not include:

1. Claims for assault or battery; or

2. Claims that involve any acts which happened prior to the inception date of this policy.

All other terms and conditions of the policy remain unchanged.

_Kevin M. Ottley_

Authorized Agent

EXHIBIT A, page 15

## SERVICE OF SUIT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| J. Douglass Jennings, Jr. APC | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| EPL | N0 41 48 58 7 | 9/19/2006    to    9/19/2007 | 09/19/06 |
| Issued by (Name of Insurance Company) | | | |
| ILLINOIS UNION INSURANCE CO | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Information about service of "suits" upon us is given below. Service of process of "suits" against us may be made
upon the following person, or another person we may designate:

> Saverio Rocca, Assistant General Counsel
> ACE USA Companies
> Two Liberty Place - TL35M
> 1601 Chestnut Street
> Philadelphia, PA 19103

The person named above is authorized and directed to accept service of process on our behalf in any action, "suit" or proceeding instituted against us. If you request, we will give you a written promise that a general appearance will be entered on our behalf if a "suit" is brought.

If you request, we will submit to the jurisdiction of any court of competent jurisdiction. We will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as our agent for service of process. In these jurisdictions, we designate the Director of Insurance as our true and lawful attorney upon whom service of process on our behalf may be made. We also authorize the Director of Insurance to mail process received on behalf to the company person named above.

If you are a resident of Canada, you may also serve "suit" upon us by serving the government official designated by the law of your province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS OTHER THAN AS ABOVE STATED.

*Kevin M. Otley*

Authorized Agent

XS-1U96d (03/2002)  (Readable)

EXHIBIT A - page 16

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured | | Endorsement Number |
|---|---|---|
| J. Douglass Jennings, Jr. APC | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| EPL | N0 41 48 58 7 | 09/19/06    TO    09/19/07 | 09/19/06 |
| Issued by   (Name of Insurance Company) | | |
| ILLINOIS UNION INSURANCE CO | | |

## Exclusion of Terrorism

### This endorsement modifies insurance provided under the following:
### Employment Practices Insurance Coverage

It is agreed that:

A.    Section IX, Definitions, of the policy is amended by adding the following and apply under this endorsement wherever the term Terrorism, is bold:

"Terrorism" means activities against persons, organizations or property of any nature:

1.    That involve the following or preparation for the following:

   a.    Use or threat of force or violence; or

   b.    Commission or threat of a dangerous act; or

   c.    Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system;  and

2.    When one or both of the following applies:

   a.    The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b.    It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophy or ideology.

B.    Section II, Exclusions: What is Not Covered, of the policy is amended by adding the following:

Terrorism. This policy does not cover any Loss arising out of, based upon, related to, attributable to, directly or indirectly in connection with, or alleging, directly or indirectly, Terrorism, including action in hindering or defending against an actual or expected incident of Terrorism. Loss and Defense Costs are excluded regardless of any other cause or event that contributes concurrently or in any sequence to such Loss.

All other terms and conditions of this "Policy" remain unchanged.

Kevin M. Otlen

Authorized Agent

EXHIBIT A page 17



ace usa

| | IllinoisUnion |
|---|---|
| | Insurance Company |
| | J. Douglass Jennings, Jr. APC |
| | Policyholder |
| | N0 41 48 58 7 |
| | Policy Number |
| | Ahern Insurance Brokerage |
| | Broker/Producer |

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM    INSURANCE COVERAGE

You have been notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you were given the right to purchase insurance coverage for losses arising out of the acts of terrorism, as defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

RESPONSIBILITY FOR COMPENSATION UNDER THE ACT IS SHARED BETWEEN INSURANCE COMPANIES COVERED BY THE ACT AND THE UNITED STATES.  ANY COVERAGE PURCHASED FOR LOSSES CAUSED BY ACTS OF TERRORISM DEFINED IN THE ACT IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW.  UNDER THE FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM FOR THE TERRORISM COVERAGE DEFINED IN THE ACT SET FORTH BELOW DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated.  ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $ 149.27 , however you elected to decline such coverage.

Notice Form 5

TRIA15 (01/03)

EXHIBIT A, page 18

NO 41 48 58 7                                                    IL P 001 01 04

# U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice To The PolicyHolder

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- -- Foreign agents;
- -- Front organizations;
- -- Terrorists;
- -- Terrorists organizations; and
- -- Narcotics Traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that your any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04              ISO Properties, Inc., 2004              **Page 1 of 1**

EXHIBIT A, page 19

## SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| J. Douglass Jennings, Jr. APC | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| EPL | N0 41 48 58 7 | 9/19/2006 to 9/19/2007 | 9/19/2006 |
| Issued By (Name of Insurance Company) | | | |
| ILLINOIS UNION INSURANCE CO | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

### ILLINOIS UNION INSURANCE COMPANY
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

### WESTCHESTER SURPLUS LINES INSURANCE COMPANY
500 Colonial Center Parkway, Suite 200, Roswell, GA 30076

GEORGE D. MULLIGAN, Secretary

DENNIS A. CROSBY, JR., President

Authorized Agent

LD-5S23h (2/05) Ptd. in U.S.A.

EXHIBIT A, page 20

# INVOICE
7L721 ©2001 REDIFORM® 030901



INVOICE NO.
1247

SOLD TO:
ADDRESS:
CITY, STATE, ZIP

SHIP TO:
ADDRESS:
CITY, STATE, ZIP

| QUANTITY | CUSTOMER'S ORDER | | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | SOLD BY | TERMS: | F.O.B. 4/14/08 | Jennings vs. Illinois Union Ins. Co. 08 cv 0676 - BEN | 30 | — |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | BC# 3098 | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

J. Douglass Jennings, Jr., A.P.C. & John Douglass Jennings, Jr., Esq.,

**(b)** County of Residence of First Listed Plaintiff    San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Donald P. Tremblay, Esq., 12651 High Bluff Dr., Ste. 300, San Diego, CA 92130; (858) 792-7492

## DEFENDANTS

Illinois Union Insurance Company

County of Residence of First Listed Defendant    Unknown
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)    '08 CV 676 BEN AJB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Breach of Contract; Breach of Implied Covenant of Good Faith & Fair Dealing; Fraud; et al.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)   JUDGE                    DOCKET NUMBER

DATE    04/14/2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  1241     AMOUNT  $350     APPLYING IFP     JUDGE     MAG. JUDGE

SU  4/14/08

CB